UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and HOWARD McDOUGALL, Trustee, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | No. 1:10-cv-01447 |
| MURPHY BROTHERS, INC., a dissolved Illinois corporation, | ) ) ) | Judge: Matthew F. Kennelly |
| | ) | Magistrate Judge: Susan E. Cox |
| Defendant. | ) | |

MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

James S. Zmuda
Arthur W. Eggers
Califf & Harper, P.C.
1250 East Diehl Road, Suite 108
Naperville, Illinois 60563
Telephone:     (800) 764-4999
Facsimile:     (309) 764-8394
Email:         jzmuda@califf.com
               aeggers@califf.com

## TABLE OF CONTENTS AND CASES

I.     **INTRODUCTION**.................................................................... 1

      *Central States, Southeast & Southwest Areas Pension Fund v. Waterland Trucking Serv.*, 375 F. Supp. 2d 684 (N.D. Ill. 2005).................................... 1

II.    **UNDISPUTED MATERIAL FACTS** ........................................................ 2

III.   **ISSUES** ......................................................................................... 2

      A.     Whether The Fund's Claim For Interim Payments is Frivolous

      B.     Whether Making The Interim Payments
           Would Cause MBI Irreparable Harm

IV.   **STANDARD FOR SUMMARY JUDGMENT**........................................... 2

      *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................. 3

      *Warsco v. Preferred Tech. Group*, 258 F.3d 557 (7th Cir. 2001) ................. 3

      *Chemsource, Inc. v. Hub Group, Inc.*, 106 F.3d 1358 (7th Cir. 1997) ........ .. 3

      *Holland v. Jefferson Nat. Life Ins. Co.*, 883 F.2d 1307 (7th Cir. 1989) ....... . 3

      *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232 (7th Cir. 1991) .............. . 3

      *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789 (7th Cir. 1997) ............... 3

      *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)................................... 4

V.     **ARGUMENT** ................................................................................. 4

      *Central States, Southeast and Southwest Areas Pension Fund v. Bomar National, Inc.*, 253 F. 3d 1011 (7th Cir. 2001) ............................................. 4

      *Central States, Southeast and Southwest Areas Pension Fund v. Warner and Sons, Inc.*, 2008 U.S. Dist. LEXIS 76317 (September 9, 2008, N.D. Ill.)............................................................................................. 4

      *Central States, Southeast and Southwest Areas Pension Fund v. Holloway Construction Co.*, 2000 U.S. Dist. LEXIS 925, (January 28, 2000, N.D. Ill. )............................................................................................. 5

A.    The Fund's Claim For Interim Payments Is Frivolous .................... 6

      1.    *The "plan" component of 29 U.S.C. § 1383(b)(1) is clearly satisfied* ................................................. 7

      2.    *The "employer" component of 29 U.S.C. § 1383(b) is clearly satisfied* ...................................... 8

*Union Asphalts and Roadoils, Inc. v. MO-KAN Teamsters Pensions Fund*, 857 F.2d 1230 (8th Cir. 1988) ............................................. 10

*Central States, Southeast and Southwest Areas Pension Fund v. Warner and Sons, Inc.*, 2008 U.S. Dist. LEXIS 76317 (September 9, 2008, N.D. Ill.) ................................................. 10

B.    MBI Would Suffer Irreparable Harm In Making Interim Payments To The Fund .................................... 12

*Central States, Southeast and Southwest Areas Pension Fund v. Warner and Sons, Inc.*, 2008 U.S. Dist. LEXIS 76317 (September 9, 2008, N.D. Ill.) ................................................. 12

*Debrenceni v. Merchants Terminal Corp.*, 889 F.2d 1 (1st Dist.1989)......... 12-13

VI.    **CONCLUSION** ................................................. 14

    CERTIFICATE OF SERVICE ................................................. 15

## I.    INTRODUCTION

This case was commenced on March 4, 2010 by the Plaintiffs, CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND ("Fund") and HOWARD McDOUGALL, filing a Complaint ("Pl. Comp.") against MURPHY BROS., INC., a dissolved Illinois corporation ("MBI"), for interim payments based on an alleged complete withdrawal from a multiemployer pension plan. MBI contends it has no withdrawal liability to the Fund, as a result of the applicability of 29 U.S.C. § 1383(b) to MBI, pursuant to the undisputed material facts.

MBI acknowledges the issue of the applicability of the so called Building and Construction Industry Exemption ("BCIE") of 29 U.S.C. § 1383(b)[1] is pending in the matter of the arbitration between the Fund and MBI, in American Arbitration Association Case Number 51 621 0987 09 ("Arbitration"), before Arbitrator Norman Brand. However, the mere fact an arbitration is pending does not automatically preclude the applicability of the BCIE as a complete "defense" to the Fund's claim for a judgment and interim payments in this case.

As stated in *Central States, Southeast & Southwest Areas Pension Fund v. Waterland Trucking Serv.*, 375 F. Supp. 2d 684, 686 (N.D. Ill. 2005), the only basis for an employer to avoid interim payments pending arbitration is to demonstrate both (1) the claim made by the fund is frivolous and (2) making the requested interim payments will cause the employer irreparable harm. MBI respectfully submits this is one case in which both requirements, to the extent applicable, are met, and MBI should not be found liable to the Fund for any interim payments related to the asserted withdrawal liability.

---

[1] This statutory provision is sometimes referenced as the "BCIE" in this Memorandum of Law.

1

## II.   UNDISPUTED MATERIAL FACTS

The material facts are not disputed.  Those facts are contained in MBI's separate

Statement of Undisputed Material Facts ("SUMF") and referenced in this Memorandum of Law

as appropriate.

## III.   ISSUES

A.   <u>Whether The Fund's Claim For Interim Payments is Frivolous</u>

B.   <u>Whether Making The Interim Payments Would Cause MBI Irreparable Harm</u>

## IV.   STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 states, in pertinent part, as follows:

> **Rule 56.  Summary Judgment**
>
> ...
>
> **(b)     For Defending Party.**   A party against whom a claim ... is asserted ... may, at any time move ... for summary judgment in the party's favor as to all or any part thereof.
>
> **(c)     Motions and Proceedings Thereon.**   ...   The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law.

Fed. R. Civ. P. 56 (b), (c).

Summary judgment should be granted where "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c).  The moving party has the responsibility of informing the

Court as to portions of the record that demonstrate the absence of a genuine issue of material

fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the movant has met its burden, to survive summary judgment the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which he bears the burden of proof at trial." *Warsco v. Preferred Tech. Group*, 258 F.3d 557, 563 (7th Cir. 2001). *See also Celotex Corp.*, 477 U.S. at 322-24. "The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence." *Chemsource, Inc. v. Hub Group, Inc.*, 106 F.3d 1358, 1361 (7th Cir. 1997).

This Court must nonetheless "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." *Holland v. Jefferson Nat. Life Ins. Co.*, 883 F.2d 1307, 1312 (7th Cir. 1989). In doing so, this Court is not "required to draw every conceivable inference from the record -- only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991). Therefore, if the record before this Court "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). However, in ruling on a motion for summary judgment, this Court may not weigh the evidence or resolve issues of fact; disputed facts must be left for resolution at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

## V.    ARGUMENT

The BCIE is applicable when:

> (A)    substantially all the employees with respect to whom the employer has an obligation to contribute under the plan work in the building and construction industry, and
> (B)    the plan –
>     (i)    primarily covers employees in the building and construction industry, or
>     (ii)    is amended to provide that this subsection applies to employers described in this paragraph.

29 U.S.C. § 1383(b)(1). The BCIE includes a "plan" requirement or component (i.e., part (B))[2] and an "employer" requirement or component (i.e., part (A)).[3]

MBI acknowledges the "pay now, dispute later" system regarding alleged withdrawal liability and the BCIE. However, as stated by the United States Court of Appeals for the Seventh Circuit, with regard to the exception to this system:

> [T]he employer must establish 1) that the pension fund's claim is frivolous and 2) that imposing interim liability would cause irreparable harm.

*Central States, Southeast and Southwest Areas Pension Fund v. Bomar National, Inc.*, 253 F.3d 1011, 1019 (7th Cir. 2001).

As stated by the Honorable Robert M. Dow, Jr. of this Court:

> All that this Court may decide is whether the Pension Fund lacks a "colorable claim" because Warner and Sons falls squarely within the building and construction industry exemption. Only then would Warner and Sons be relieved of its obligation to make interim withdrawal liability payments.

*Central States, Southeast and Southwest Areas Pension Fund v. Warner and Sons, Inc.*, 2008 U.S. Dist. LEXIS 76317, *9-10 (September 9, 2008, N.D. Ill.). Similarly, the Honorable

---

[2] This is later referenced as the "plan" component.

[3] This is later referenced as the "employer" component.

Matthew F. Kennelly stated as follows in *Central States, Southeast and Southwest Areas Pension Fund v. Holloway Construction Co.*, 2000 U.S. Dist. LEXIS 925, *7-8 (January 28, 2000, N.D. Ill.) (underlining added):

> The [*Trustees of the Chicago Truck Drivers, Helpers & Warehouse Workers Union (Independent) Pension Fund v.*] *Central Transport* [Inc., 935 F.2d 114, 118 (7th Cir. 1991)] opinion, which seemed to hold that an employer can never escape interim payments, recognized that [*Robbins v.*] *McNicholas* [*Transportation Co.*, 819 F.2d 682 (7th Cir. 1987)] created an exception to the "pay now, dispute later" scheme, but the court limited the exception substantially.    The court held that "*McNicholas* is at most a recognition that <u>if the fund's claim is frivolous -- if the arbitrator is almost certain to rule for the employer</u> -- then the plan is engaged in a ploy that a court may defeat." *935 F.2d at 119*. <u>The district court's job</u>, according to *Central Transport*, <u>is simply to assure[] itself that the plan's claim is legitimate,</u>" and <u>if</u> the court can do that, it should order the making of interim payments and leave the rest to the arbitrator." *Id. Trustees of the Chicago Truck Drivers, Helpers & Warehouse Workers Union (Independent) Pension Fund v. Rentar Industries, Inc., 951 F.2d 152 (7th Cir. 1991)*, decided six months after *Central Transport*, reaffirms the notion that the second element set out in *McNicholas* is relevant only if the first element is satisfied. The court in *Rentar* held that in the interim payment analysis, "irreparable harm becomes important only if the employer makes an affirmative showing that the pension fund lacks a colorable claim." *Id. at 155*. Based on these cases, defendants can escape liability for the interim payments demanded by the Fund, if at all, only if the Fund's claim is frivolous; if the Fund's claim is colorable, defendants must pay.

The pertinent inquiry in the instant case is whether the Fund's claim for interim payments is colorable or, instead, frivolous. For the reasons that follow, MBI respectfully submits the Fund's claim is frivolous, meaning Arbitrator Brand is almost certain to rule for MBI in the pending Arbitration.

A.    The Fund's Claim For Interim Payments Is Frivolous

The Fund contends MBI was required to make payments to the Fund pursuant to a series

of collective bargaining agreements executed with various local unions affiliated with the

International Brotherhood of Teamsters ("Union").  (Pl. Comp. at paragraph 8 (Docket No. 1)).

Respective counsel for the Fund and MBI stipulated as to the authenticity of these collective

bargaining agreements ("CBAs")[4] during the recent deposition of William F. Murphy, former

President of MBI, taken in connection with the Arbitration proceeding.  (*See* SUMF at paragraph

15).

Appended to each of the CBAs is a Schedule B, which states, in relevant part, as follows:

> Furthermore, under this Agreement Employer shall only be
> obligated to contribute to plans, which primarily cover employees
> in the building and construction industry, or plans, which have
> been amended to provide that the construction industry exemption
> of Sec. 4203 of ERISA applies.

(SUMF at paragraph 16).  The contents of the CBAs, including Schedule B, were the subject of

collective bargaining between the Union and the PLCA.  (*See* SUMF at paragraph 17).

Each of the CBAs requires each participating employer, such as MBI, to sign Schedule B,

"[i]n order that Employer may legally contribute to the Fringe Funds ... ."  (SUMF at paragraph

18).  The Fund is one of the fringe benefit funds mentioned in the CBAs.  (SUMF at paragraph

19).  Accordingly, the Fund, which relies upon the CBAs to support its claim for relief in this

case, is bound by the language of the CBAs, including Schedule B.[5]

---

[4] Each of the CBAs is between the Union and the Pipe Line Contractors Association ("PLCA").  MBI
agreed to be bound by each of the CBAs through a separate participation agreement.

[5] This case presents no issue concerning contributions by MBI to the Fund, but rather, only MBI's alleged
withdrawal liability to the Fund.  The CBAs are relevant to this action, as the CBAs concern the issue of
withdrawal liability in this case.

1. *The "plan" component of 29 U.S.C. § 1383(b)(1) is clearly satisfied*

The quoted language of Schedule B is clear and unambiguous.  Under Schedule B of the CBAs, MBI was only required to contribute to plans (1) primarily covering employees in the building and construction industry, or (2) plans providing the BCIE applies.   Given the clear and unambiguous language of Schedule B of the CBAs, the Fund has two (2) choices in this litigation:

(1)     admit (a) the plan primarily covers employees in the building and construction industry or (b) MBI is subject to the BCIE, as stated in the plan document, in accordance with Schedule B of the CBAs; or

(2)     admit MBI was not required to contribute to the Fund, as MBI was only required to contribute to plans primarily covering employees in the building and construction industry or plans providing the BCIE applies.

The Union has made its choice in this case, at least implicitly, by pleading MBI was required to contribute to the Fund by virtue of the CBAs.  By so pleading its claim for interim payments in this case, the Fund is bound by the portion of the CBAs controlling the issue of the alleged withdrawal liability on the part of MBI.  Specifically, the Fund has admitted, as stated in Schedule B of the CBAs, the Fund covers only employees primarily in the building and construction industry or the plan document relating to the Fund provides the BCIE applies ("Fund's Admission").  Through such admission, the Fund is relegated to the inevitable conclusion the "plan" component of the BCIE applies to MBI, based upon the undisputed facts in the record.

If the Union were to contend (1) the Fund does not cover primarily employees in the building and construction industry and (2) the BCIE does not apply to MBI, MBI could not have any withdrawal liability to the Fund by definition, because MBI would not have been required to

contribute to the Fund.[6] However, the Fund is not making such a contention in this case, as clearly shown in the Pl. Comp.

      2.    *The "employer" component of 29 U.S.C. § 1383(b) is clearly satisfied*

The other component of the BCIE concerns the nature of the employer's work. The work of MBI was clearly pipe line <u>construction</u> within the meaning of the BCIE.

If the plan document relating to the Fund provides the BCIE applies, this necessarily means any employer, including MBI, contributing to the Fund is entitled to the BCIE. Alternatively, if the plan document relating to the Fund covers <u>primarily</u> employees in the building and construction industry, as the Fund admits, this fact, coupled with other undisputed facts in the record, requires the following conclusion: <u>substantially</u> all the employees for whom MBI was required to make contributions to the Fund were working in the building and construction industry.

Schedule B of the CBAs states, in relevant part, as follows:

> ... Employer's obligations shall ... be considered within and limited by the construction industry exemption of the Employee Retirement Income Security Act ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MEPPA") as long as said Employer is a construction industry employer within the meaning of 29 U.S.C. §1383(b) of ERISA and/or MEPPA.

(SUMF at paragraph 16). This language, the Union may say, only begs the question whether substantially all of the employees of MBI worked within the building and construction industry. However, the undisputed facts of the record, as contained primarily within the clear and unambiguous language of the CBAs, establish MBI met the "employer" component of 29 U.S.C. § 1383(b).

---

[6] If the Union were to make such a contention, MBI would sue the Fund for a refund of all contributions made.

The CBAs clearly state:

> … This Agreement shall apply to and cover all transportation mainline pipe line and underground cable work coming within the jurisdiction of Union contracted for or performed by Employer … as such work is more fully described in Paragraph[] (B) below.

(SUMF at paragraph 22). The referenced paragraph (B) of the CBAs, regarding the transportation mainline pipe lines within the scope of the CBAs, states, in relevant part, such pipe lines are those involving:

> The <u>construction</u>, installation, double-jointing, rebeveling, treating, insulating, reconditioning, testing, taking-up, re-laying, relocation, stockpiling <u>or hauling</u> of cross country <u>pipe lines</u> <u>or any segments thereof</u> transporting coal, gas, oil, water or other transportable materials, vapors or liquids, including portions of such pipe lines within private property boundaries up to the first metering station or connection.

(SUMF at paragraph 23 (underlining added)). The CBAs therefore clearly apply to the construction of pipe lines (and segments thereof). This is precisely the type of work previously performed by MBI, when MBI was operating as a pipe line contractor.

The scope of the work of the employer, as defined by the CBAs, together with the Fund's Admission, and other language in the CBAs, clearly shows <u>substantially</u> all the employees for whom MBI was required to make contributions to the Fund were working in the building and construction industry. The Fund's admission is as follows: the Fund, by virtue of the CBAs, covers only employees <u>primarily</u>[7] in the building and construction industry <u>or</u> the plan document relating to the Fund provides the BCIE applies. In either event, based on the undisputed facts,

---

[7] In the instant case, the Fund admits the plan document <u>primarily</u> covers employees in the building and construction industry. "Primarily" means "chiefly" or in the first part. BLACK'S LAW DICTIONARY 1190 (6th ed. 1990).

9

the conclusion resulting from such admission must be MBI meets the "employer" component of 29 U.S.C. § 1383(b).

The phrase "building and construction industry" is not defined in the Multiemployer Pension Amendments Act of 1980 ("MPPAA"). *See Union Asphalts and Roadoils, Inc. v. MO-KAN Teamsters Pensions Fund*, 857 F.2d 1230 (8th Cir. 1988). However, in the legislative history of the MPPAA, Congress indicated the phrase should be given the same meaning as has developed in the administration of the Taft-Hartley Act. *See id.* at 1234. At least one court has looked to case authority under section 8(f) of the Taft-Hartley Act, 29 U.S.C. 168(f), which contains the same phrase. *Id.* As recognized by the court in *Union Asphalts*, the National Labor Relations Board has generally defined the phrase as "subsum[ing] the provision of labor whereby materials and constituent parts may be combined on the building site to form, make[,] or build a structure." *Id.* (quoting *Carpet, Linoleum and Soft Tile Local Union No. 1247*, 156 NLRB 951, 959 (1966)).

The business of MBI was to provide labor to combine materials, at various projects, to build pipe lines. The question is whether <u>substantially</u> all the employees for whom MBI was required to make contributions to the Fund were working in the building and construction industry. The undisputed material facts, as contained in the SUMF, clearly demonstrate <u>substantially</u> all the employees for whom MBI was required to make contributions to the Fund were working in the building and construction industry.

The Fund, nonetheless, has argued, in other cases, work within the building and construction industry <u>does</u> <u>not</u> <u>include</u> hauling materials to and from jobsites.[8] *E.g., Central States, Southeast and Southwest Areas Pension Fund v. Warner and Sons, Inc.*, 2008 U.S. Dist.

---

[8] Within the pipe line construction industry, the hauling of materials to the jobsite is known as "mobilization."

LEXIS 76317, *9-10 (September 9, 2008, N.D. Ill.). This is a primary basis for the Fund having

argued, in other cases, substantially all the employees for whom an employer was required to

make contributions to the Fund were not working in the building and construction industry.

In the present case, based upon developments to this point in the Arbitration, MBI

understands the Fund may or may not argue substantially all the employees for whom MBI was

required to make contributions to the Fund were not working in the building and construction

industry. If the Fund were to assert such argument, based upon developments to this point in the

Arbitration, MBI understands the Fund's only potential factual basis (assuming the Fund thought

such factual basis was accurate) for such argument would be as follows: the employees for

whom MBI was required to make contributions to the Fund spent legally significant time hauling

materials to and from jobsites.

However, the CBAs, under heading III., part A., entitled "**WORKING RULES**," state:

"The time of the men shall start when the men leave the warehouse and shall end when the

equipment is stored or parked at the warehouse or in the field." (SUMF at paragraph 24). The

process of hauling materials from one jobsite to the warehouse, or staging area, for the next

jobsite[9] occurs before the employees, for whom MBI was required to make contributions to the

Fund, begin transporting materials between the warehouse, or "yard," and the field, as part of the

pipe line construction process. (SUMF at paragraph 42). Therefore, the CBAs exclude from

"work time" the time spent hauling materials to the jobsite.[10] This necessarily means the work

described in section III.A. of the CBAs is all, or, at a minimum, substantially all work within the

---

[9] This process is known within the pipe line construction industry as "mobilization." (See SUMF at paragraph 26).

[10] As part of each project, MBI would establish a "warehouse" or "yard" as part of the project or jobsite. (See SUMF at paragraph 40).

building and construction industry, as such work <u>excludes</u> mobilization, meaning hauling

equipment and materials to and from the jobsite. Accordingly, the potential factual basis to

support the Fund's potential argument is forestalled in this case by the clear and unambiguous

language of the CBAs.

This conclusion is also supported by the testimony of William F. Murphy, former

President of MBI. Mr. Murphy recently testified, under oath, the work of employees covered by

the CBAs minimally included, if at all, hauling equipment from the prior jobsite to the next

jobsite. All or substantially all of the work of the MBI employees covered by the CBAs was

directly related to the construction of pipe lines. (*See* SUMF at paragraph 25).

The record is clear and undisputed with regard to the material facts pertaining to the

applicability of the BCIE to MBI. Arbitrator Brand is almost certain to rule in MBI's favor.

B.     MBI Would Suffer Irreparable Harm In Making Interim Payments To The Fund

Having established Arbitrator Brand is almost certain to rule in favor of MBI regarding

the applicability of the BCIE, MBI must also show it would suffer irreparable harm, to the extent

such concept is applicable to MBI, in making the interim payments sought by the Fund. In the

first instance, according to the Honorable Robert M. Dow, Jr. of this Court, "irreparable harm"

requires, in this context, the threat of imminent insolvency. *Central States, Southeast and

Southwest Areas Pension Fund v. Warner and Sons, Inc.*, 2008 U.S. Dist. LEXIS 76317, *7

(September 9, 2008, N.D. Ill.) (citing *Debreceni v. Merchants Terminal Corp.*, 889 F.2d 1, 7 n.6

(1st Dist. 1989)).

However, *Warner and Sons* does not state a showing of the threat of imminent insolvency

is the only way to show irreparable harm in the context of the exception to the interim payment

rule. More fundamentally, *Warner and Sons* does not address the applicability of the irreparable

harm test to an already insolvent company, which is not operating and not an existing legal entity. Nor has the research of MBI counsel revealed any case authority holding an insolvent company must, but cannot, meet the irreparable harm test.

The *Debrecini* case provides the basis of the tenable argument the irreparable harm test is inapplicable to an insolvent company, which is not operating. The court in *Debrecini* stated, in relevant part, as follows:

> Requiring withdrawing employers to make withdrawal payments "up front" is consistent with the [pay now, dispute later] policy. The purpose of [the policy] would appear to be to protect the stability and solvency of the plans and cushion the shock to plan management and other participating employers created by the sudden withdrawal of a plan participant. The "pay now, dispute later" feature of the MPPAA, *Robbins v. Pepsi-Cola Metropolitan Bottling Co.*, 800 F.2d 641, 642 (7th Cir. 1986), functions to preserve plan cash flow and to thwart the use of dilatory tactics by employers. Were we to adopt Merchants' interpretation, the payment of withdrawal liability on an interim basis by withdrawn employers might largely disappear, because employer requests for arbitration on the issue of their liability for interim payments would become a standard ploy to delay employer obligations to initiate payments.

*Debrecini*, 889 F.2d at 5.

The rationale for requiring interim payments, as stated in *Debrecini*, is wholly inapplicable to an already insolvent company having no assets and no operations, or corresponding inflow of revenue of any kind. In the present case, the Fund sued MBI, knowing MBI is not an operating company, without assets. (SUMF at paragraph 12, 13). Nor is this information new to the Fund. MBI's alleged withdrawal occurred years ago, by the Fund's own admission. (SUMF at paragraph 9). No dilatory tactic on the part of MBI is at play here. For these reasons, the irreparable harm test is not even applicable to MBI.

13

Nonetheless, even if this Court determines the irreparable harm test should be applied to MBI, logic can easily create the tenable position an insolvent company, such as MBI, can suffer irreparable harm as a result of an interim payment award against it. MBI has been dissolved since 2006. (SUMF at paragraph 13). The Fund has known MBI is insolvent since at least November of 2008. (SUMF at paragraph 12). Now, through this action, the Fund seeks to add more than $2,138,272.55 of liability to an already defunct corporation's balance sheet, thereby increasing the debt of an already insolvent company.

The antithesis of "irreparable harm" is "reparable harm." The harm to MBI in being required to pay more than $2,138,272.55 is clearly not reparable. MBI has no way to pay such proposed liability, or any outstanding liability for that matter, as MBI has no assets and is not operating. Accordingly, MBI has clearly met its burden of showing irreparable harm.

## VI.   CONCLUSION

Based on the foregoing, together with its Motion for Summary Judgment and Statement of Undisputed Facts, the Defendant, MURPHY BROS., INC., a dissolved Illinois corporation, respectfully submits there is no genuine issue as to any material fact, and Summary Judgment should be granted in favor of the Defendant and against the Plaintiffs.

14

MURPHY BROS., INC., Defendant

/s/ James S. Zmuda

By: _____
      James S. Zmuda

CALIFF & HARPER, P.C.
1250 East Diehl Road, Suite 108
Naperville, Illinois 60563
Telephone:    (800) 764-4999

and

506 15th Street, Suite 600
Moline, Illinois 61265
Telephone:    (309) 764-8300
Facsimile:    (309) 764-8394
Email:    jzmuda@califf.com

## CERTIFICATE OF SERVICE

I hereby certify on October 15, 2010 the foregoing document was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system to all attorneys of record via ECF, as follows:

Timothy C. Reuter
treuter@centralstatesfunds.org

Charles H. Lee
chlee@centralstates.org

Edward H. Bogle
ebogle@centralstatesfunds.org

John J. Franczyk, Jr.
jfranczyk@centralstates.org

James S. Zmuda
jzmuda@califf.com

MURPHY BROS., INC., Defendant

/s/ James S. Zmuda

By: _____
     James S. Zmuda

CALIFF & HARPER, P.C.
1250 East Diehl Road, Suite 108
Naperville, Illinois  60563
Telephone:     (800) 764-4999

and

506 15th Street, Suite 600
Moline, Illinois  61265
Telephone:     (309) 764-8300
Facsimile:      (309) 764-8394
Email:           jzmuda@califf.com

jsz.pldg.5314-16

16