**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and HOWARD McDOUGALL, Trustee, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 10-1447 |
| vs. | ) ) | Judge Kennelly |
| MURPHY BROTHERS, INC., an Illinois corporation, | ) ) ) | Magistrate Judge Cox |
| Defendant. | ) ) | |

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Timothy C. Reuter  (ARDC #06279373)
CENTRAL STATES FUNDS
Law Department
9377 W. Higgins Road, 10th Floor
Rosemont, IL  60018
(847) 518-9800, Ext. 3481
treuter@centralstatesfunds.org

*COUNSEL FOR CENTRAL STATES*

## I.  INTRODUCTION

Murphy Bros., Inc. ("Murphy"), in its motion for summary judgment, argues that the Central States, Southeast and Southwest Areas Pension Fund's (the "Fund") and Howard McDougall's (collectively, "Central States") claim for interim withdrawal liability payments is frivolous.  In support of this argument, Murphy asserts that the arbitrator in the pending arbitration before the American Arbitration Association will undoubtedly hold that Murphy is entitled to the building and construction industry exemption enumerated in 29 U.S.C. §§ 1383(b) and 1388(d)(1).[1]  In support of said contention, Murphy claims that it is entitled to the exemption merely because its collective bargaining agreement ("CBA") states that the company shall only be required to contribute to plans which have adopted the building and construction industry exemption.  This, however, ignores the fact that, while a plan may recognize the building and construction industry exemption, an employer must still satisfy the exemption's underlying statutory requirements, a concept which is made clear by the plain language of Schedule B of Murphy's CBA upon which the company continuously relies.

Murphy also spends a great deal of time arguing that, insofar as the company is a building and construction industry employer, it must follow that all of its employees perform work in the building and construction industry.  In bringing forth this argument, Murphy is disregarding the plain language of the statute as well as the National Labor Relations Board decisions and federal court decisions interpreting that language.  The focus of the exemption, is whether substantially all of the *employees* of Murphy, on whose behalf

---

[1] *Murphy Bros., Inc. and Central States, Se. & Sw. Areas Pension Fund*, AAA No. 51 621 0987 09.

-1-

Murphy is required to contribute to the Fund, are performing building and construction industry work. Murphy's only support for the contention that substantially all of its employees were performing work in the building and construction industry exemption is limited to the self-serving testimony of the company's president, and even then, that testimony supports, rather than refutes, Central States' claims. Finally, Murphy has failed to show that requiring it to make its statutorily mandated interim payments would cause irreparable harm. As such, the Defendant's Motion for Summary Judgment should be denied.

## II. ARGUMENT

### A. Central States Has A Colorable Claim Against The Defendant.

In its Motion for Summary Judgment, Murphy accepts that there is only one extremely limited exception to the strict interim payment requirement. An employer can avoid making interim payments if it establishes *both* (1) that the Fund's claim is frivolous *and* (2) that it would be irreparably harmed by making the interim payments. *Cent. States, Se. & Sw. Areas Pension Fund v. Bomar Nat'l, Inc.*, 253 F.3d 1011, 1019 (7th Cir. 2001). "It is a difficult standard to meet, and it is meant to be that way." *Id*. Here, Murphy cannot meet this "difficult standard" because the Fund's claim is colorable and there is no irreparable harm. A claim is frivolous if it has "no arguable basis in law or fact." *Talley v. Lane*, 13 F.3d 1031, 1033 (7th Cir. 1994); *Cent. States, Se. & Sw. Areas Pension Fund v. Warner & Sons, Inc.*, 2008 WL 4201014, *2 (N.D. Ill 2008) (attached hereto as **Exhibit A**.)

Murphy argues that, based upon the language contained within Schedule B of its CBA, it was a building and construction industry employer as Murphy was only required to contribute to plans (1) primarily covering employees in the building and construction

industry, or (2) plans providing that the building and construction industry exemption applies. Murphy continually construes this language as an "admission" by the Fund that the building and construction industry exemption applies to Murphy. However, this convoluted and circular argument ignores the plain language of both the plan document and of the very Schedule B upon which Murphy relies.

The Fund does not primarily covered employees in the building and construction industry. (Plaintiffs' L.R. 56.1(a)(3) Statement of Additional Material Facts ("Pl. SAMF"), ¶ 1.) The Fund does, however, recognize that the building and construction industry exemption applies to "those Employers described in ERISA section [1383(b)(1)]." (Pl. SAMF ¶ 15.) But while the Fund recognizes that the building and construction industry exemption applies to those employers described in §1383(b)(1), the Fund does not believe that Murphy is one of those employers. Even Schedule B to the CBA upon which Murphy continually relies states that, "...Employer's obligations shall...be considered within and limited by the construction industry exemption of [ERISA] as amended by the [MPPAA] *as long as said Employer is a construction industry employer within the meaning of 29 U.S.C. §1383(b) of ERISA and/or [MPPAA].*" (Defendant's L.R. 56.1(a)(3) Statement of Material Facts ("Df. SMF"), ¶ 21.) The mere fact that the Fund has adopted the building and construction industry exemption does not relieve employers of the burden to prove that they satisfy the statutory requirements.

**1.     Murphy Misconstrues the Focus of the Exemption.**

Murphy argues, without any factual support, that "The scope of the work of the employer...clearly shows <u>substantially</u> all the employees for whom [Murphy] was required to make contributions to the Fund were working in the building and construction industry."

(Dkt. 22, p. 9)  In this way, Murphy is attempting to claim that, simply because it is a building and construction industry employer, it thus follows that it is entitled to the building and construction industry exemption.  However, such an interpretation of the exemption ignores the plain language of the statute.

In order to claim that it is entitled to the exemption, an employer must satisfy the requirements of §1383(b) which provides that:

> in the case of an employer that has an obligation to contribute under a plan for work performed in the building and construction industry, a complete withdrawal occurs *only* as described in paragraph (2), if:
>
> (A)    Substantially all the employees with respect to whom the employer has an obligation to contribute under the plan performed work in the building and construction industry, . . . .

29 U.S.C. § 1383(b)(emphasis added). The fact that the focus of the exemption is on the work performed by the individual employees can be derived from the fact that the language of the statute specifically questions whether the employees performed work in the building and construction industry.  The statute goes on to narrow the focus even further to only those employees on whose behalf the employer is required to contribute.  If the focus of the exemption were on the industry of the employer, there would be no need to distinguish between employees performing construction work and those who are not, or between employees who are covered by the collective bargaining agreement and those who are not.  Thus, the relevant inquiry focuses on the work performed by the *employees*, not the employer's work force as a whole.  Murphy may very well have considered itself a construction industry employer.  Some of its employees may even have performed construction work.  However, the focus is on the work performed by Murphy's Teamster employees on whose behalf Murphy was obligated to contribute to the Fund, and

substantially all of those employees did not perform work in the building and construction industry.

The focus on the work performed by the *employees* rather than the work performed by the *employer* is highlighted by contrasting the building and construction industry exemption with the trucking industry exemption in § 1383(d). That section provides an exemption for withdrawal liability for an employer that, among other things, "has an obligation to contribute under a plan described in paragraph (2) primarily for work described in such paragraph." § 1383(d)(1)(A). Paragraph (2) then describes a plan who receives contributions from trucking industry employers and requires that "substantially all of the contributions required under the plan [be] made by *employers* primarily engaged in the long and short haul trucking industry, the household goods moving industry, or the public warehousing industry." § 1383(d)(2) (emphasis added).

As this language makes clear, the trucking industry exemption focuses on the work performed by the *employer* as a whole. In contrast, the building and construction industry exemption requires that "substantially all of the *employees* perform work in the building and construction industry." § 1383(b)(1)(A) (emphasis added). The clear distinction between the use of the term employer and the employee indicates that, for purposes of the building and construction industry exemption, it is the work performed by the *employee* that is the focus.

Though the term "building and construction industry" is not defined in MPPAA, the legislative history indicates that Congress intended that this term should be given the same meaning for MPPAA as it has for purposes of the Taft-Hartley Act. *Union Asphalts and Roadoils, Inc. v. MO-KAN Teamsters Pension Fund*, 857 F.2d 1230, 1234 (8th Cir. 1988).

Both the language of Section 8(f), which provides a definition of "building and construction industry", and the labor decisions construing Section 8(f) make it clear that the inquiry as to what an *employer* does is separate and distinct from the inquiry as to the work performed by the *employees*. Section 8(f) provides that a "pre-hire" agreement is lawful:

> for an employer engaged primarily in the building and construction industry to make an agreement covering employees engaged (or who, upon their employment, will be engaged) in the building and construction industry with a labor organization of which building and construction employees are members. . . .

29 U.S.C. § 158(f). Thus, as the language indicates, for Section 8(f) to apply, the following three factors must be satisfied: (1) the employer must be primarily engaged in the building and construction industry; (2) the employees must perform building and construction industry work; and (3) the labor organization must have building and construction industry employees as members. *Clark v. Ryan*, 818 F.2d 1102, 1107 (4th Cir. 1987). Therefore, Section 8(f) highlights the fact that the question of whether the *employer* is in the building and construction industry is separate and distinct from the inquiry of whether the *employees* perform work in the building and construction industry.

As noted above, the building and construction industry exemption in the MPPAA contains neither the requirement that the *employer* be primarily engaged in the building and construction industry nor the requirement that the labor organization have building and construction industry employees as members. Rather, the sole focus is on whether substantially all of the employees for whom the employer has an obligation to contribute perform building and construction industry work. *Compare* § 1383(a)(1)(A) *with* § 158(f).

The Eighth Circuit in *Union Asphalts* specifically analyzed whether the *employees* were involved in the construction site and the degree of the involvement of those individual

employees which is required in order to be considered building and construction industry work. *Union Asphalts*, 857 F.2d at 1235. The court performed a specific analysis focused on whether the individual employees actually spread road oils or whether they were in any way involved in actual road construction, or whether they merely drove to and from the jobsite delivering materials. *Id.* Similarly, in *Cent. States, Se. & Sw. Areas Pension Fund v. Waterland Trucking Service, Inc.*, *2006 WL 4094350* (N.D. Ill 2006) (attached hereto as **Exhibit B**) the court performed an analysis of the work done by the individual employees and whether or not the mere delivery of materials of the jobsite constituted a sufficient connection to the construction site to be considered work in the building and construction industry. Finally, the court in *Oregon-Washington Carpenters-Employers Pension Trust Fund v. BQC Construction Inc.,* unequivocally states that the proper focus is on the employees, rather than on the employer.

> "It is the *employees* for whom the employer *has an obligation to contribute* who must substantially all perform work in the building and construction industry. It is immaterial whether the employer is "primarily" engaged in the building and construction industry; it is immaterial whether substantially all of the employer's employees perform work in the building and construction industry. The statute simply says that the building and construction industry provision applies if substantially all of the employees *for whom the employer has an obligation to contribute* perform work in the building and construction industry."

485 F.Supp. 2d 1206, 1215, (D. Ore. 2007).

Thus, both the caselaw and the plain language of the statute support the conclusion that in order for an employer to qualify for the building and construction industry exemption, substantially all of the employees on whose behalf the employer is required to submit contributions to the Fund must perform work in the building and construction industry. This

is not the case for Murphy. As a result, they have failed to prove that the Fund does not have a colorable claim.

### 2. Substantially All of Murphy's Employees Do Not Perform Building and Construction Industry Work

To qualify for the building and construction industry exemption, Murphy must establish that "substantially all" of the employees for whom it contributed to the Fund were building and construction industry employees. *Cent. States, Se. & Sw. Areas Pension Fund v. Robinson Cartage Co.*, 55 F.3d 1318, 1321 n.1 (7th Cir. 1995). Although the term "substantially all" is not defined in the statute, the Seventh Circuit has defined this term to mean 85% or more. *Id*. Thus, to avail itself of this exemption, Murphy must establish that 85% or more of the employees on whose behalf it submitted contributions to the Fund were building and construction industry employees. Murphy, however, cannot meet this criteria.

Labor law limits the construction industry exemption to "work done at the site of construction." *N.L.R.B. v. International Brotherhood of Teamsters Local 294*, 342 F.2d 18 (2nd Cir. 1965); *see also General Truck Driver's Local 957 v. NLRB*, 934 F.2d 732 (6th Cir. 1991); *Landstrom v. Local Union No. 65*, 476 F.2d 1189 (2nd Cir. 1973). This exemption does not extend to delivery of materials. *Teamster's Local 982*, 181 NLRB 515, 76 LRRM 1764 (1970), *aff'd*, 450 F.2d 1322 (D.C. Cir. 1971). It is well established that the mere *delivery* of sand, gravel and concrete to a construction site (including on-site mixing and pouring) is not building and construction industry work. *Overstreet v. Tucson Ready Mix, Inc.*, 11 F.Supp.2d 1139 (D. Ariz. 1998); *St. John Trucking, Inc.*, 303 NLRB 723, 139 LRRM 1020 (1991); *Lone Star Industries*, 291 NLRB 581, 131 LRRM 1274 (1988); *Bechtel Civil and Minerals, Inc.*, 87 Labor Arb. 153 (1986); *Teamster's Local 42 (Inland Concrete*

*Enterprises, Inc.)*, 225 NLRB 209, 93 LRRM 1383 (1976); *Landstrom v. Teamsters Local Union No. 65*, 476 F.2d 1189 (2nd Cir. 1973); *Teamster's Local 294*, 195 NLRB 378, 79 LRRM 1452 (1972); *NLRB v. Teamster's Local 294*, 342 F.2d 18 (2nd Cir. 1965).

In *In re Todesca Corp.*, 1996 WL 138068 (N.L.R.B.G.C.) (Feb. 2, 1996) (attached hereto as **Exhibit C**), the NLRB's General Counsel's Office stated that "work at a construction jobsite by the unit employees involved is a necessary element for a finding of § 8(f) applicability." *Id.* at *4. The NLRB General Counsel's office further opined that drivers who delivered asphalt to construction sites were *not* engaged in "construction industry" work for purposes of § 8(f) of the National Labor Relations Act, even though the drivers were occasionally called upon "to move a pile of material of some sort from one location on the jobsite to another...." *Id.* at *1.

The only evidence which Murphy provides for proving what type of work its covered employees were performing is the testimony of Murphy's president, William Murphy, who admits that he "usually didn't go to job sites very often." (Pl. SAMF, ¶ 2.)  In addition, he is unable to quantify the number or percentage of Teamsters who were assigned to each task.  (Pl. SAMF, ¶ 3.)  Murphy contributed to the Fund on behalf of individuals who perform work under several job classifications.  However, in the words of Murphy's own president, "Generally speaking, the teamster's only job out there is to drive the vehicles, operate the vehicles." (Pl. SAMF, ¶ 4.) As Mr. Murphy's testimony shows, the Teamsters spent the majority of their time driving to and from the jobsite and the yard, the dump, the local water source, and sometimes, even local parts supply houses. (Pl. SAMF, ¶¶ 5-8.) Many of Murphy's Teamster employees,  would spend their day driving people and equipment from the yard or warehouse out to the jobsite. (Pl. SAMF, ¶¶ 8, 9.). The yard

was sometimes 5 or 10 miles from the jobsite, and several times, the yard was as far as 75 miles from the jobsite. (Pl. SAMF, ¶ 10.)   It is well established that this type of work, transporting materials to and from the job site,  does not constitute work in the building and construction industry for purposes of the exemption under §1383(b).  *See Union Asphalts,* 857 F.2d at 1235; *Waterland Trucking Service, Inc.,* No. 06 C 4455, 2006 WL 4094350 at *4.  What is more, Murphy's Teamster employees who did spend time on site, spent their time transporting materials within the construction site.  (Pl. SAMF, ¶ 11.)  However, this is also not the type of work which constitutes work in the building and construction industry. *Id.*

The closest that any of Murphy's Teamster drivers came to playing a part in the actual construction process were the Stringing truck drivers.  The Stringing truck drivers would drive the trailers which hauled the pipe which was lowered into the ground. (Pl. SAMF, ¶ 12.)  However, even these drivers did not spend the majority of their time onsite, but instead traveled back and forth between the yard and the jobsite picking up new pipe. (Pl. SAMF, ¶ 12.) The Teamster driver did not even play a part in the lowering of the pipe into ground, this task was performed by the operators. (Pl. SAMF, ¶ 13.) However, even if the Teamster driver had operated the boom mechanism which lowered the pipe into the ground, the NLRB would not consider this to be work in the building and construction industry.  *See* **Exhibit C** *In re Todesca Corp.*, 1996 WL 138068 at *3 (citing *Island Concrete Enterprises*, 225 NLRB 209 (1976) for the proposition that "the transportation and delivery of...precast concrete pipe...constituted the transportation and delivery of supplies, materials, or products,  and was not work to be performed at the site of construction...notwithstanding that the delivery of the precast concrete pipe involved the

lowering of the sections of pipe and placing the pipe segments in the trench by operation of a boom.") Again, in Mr. Murphy's own words, "the teamsters only job out there is to drive the vehicles." (Pl. SAMF, ¶ 4.) It was the job of the Laborers and the Operators to do actual onsite construction work. (Pl. SAMF, ¶¶ 13,14.) It was the Laborers and the Operators who were building and installing construction materials on site. (Pl. SAMF, ¶¶ 13,14.)

To support its contention that the Fund's claim is frivolous, Murphy is relying solely on the testimony of its president and his knowledge of the type of work performed by the actual employees on whose behalf the company contributed to the Fund, even though the company has neither a written record of who these employees are nor their particular job classifications. (Plaintiffs' L.R. 56.1(a)(3) Statement of Material Facts ("Pl. SMF"), ¶ 18.) Moreover, Mr. Murphy's knowledge is limited in that the president was only on the actual job site if there was a problem. (Pl. SAMF, ¶ 2.) Most telling of all however, is the fact that Mr. Murphy's testimony actually supports rather than negates the Fund's contentions. Mr. Murphy repeatedly illustrates how Murphy's Teamster drivers spent the vast majority of their time driving to and from the job site.

As noted earlier, the issue of whether Murphy's arguments are valid is not before this Court. MPPAA mandates that such issues be resolved in arbitration. This Court must only determine whether the Fund's claim is colorable and the Fund need only prove that its arguments are not frivolous. *Bomar*, 253 F.3d at 1019. In this case, the testimony of Murphy's own president provides all the support needed to show that the employer is not entitled to the building and construction industry exemption and that the Fund's claim is not only colorable, but valid.

**B.      Murphy Will Not Be Irreparably Harmed By Making The Interim Payment.**

Even if Murphy were able to satisfy the court that the Fund's claim is frivolous, which it has not done, it must then establish that it would be irreparably harmed by making the interim payment. *Trustees of the Chicago Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Rentar Indus., Inc.*, 951 F.2d 152, 155 (7th Cir. 1991)("irreparable harm becomes important only if the employer makes an affirmative showing that the pension fund lacks a colorable claim.")

It is hard to comprehend how Murphy could be irreparably harmed by being ordered to make its statutorily mandated interim payment.  It is important to note that because Murphy has ceased operations, there are no further operations to be financed.  Since it has ceased operations, it has likely paid other creditors to the detriment of the Fund's claim. This is exactly the result which the "pay now, dispute later" scheme seeks to prevent. *Trs. of the Chicago Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Cent. Transport, Inc.*, 935 F.2d 114, 118 (7th Cir. 1991).

Murphy states that the irreparable harm test does not apply to employers who are insolvent because the rationale for requiring the payment is "wholly inapplicable" where a company has no assets.  Murphy argues that the present action would add liability to the balance sheet of an already defunct corporation's balance sheet.  None of this however, explains how Murphy would be irreparably harmed.

Assuming Murphy is insolvent, were it to prevail in the arbitration, it would simply remove the liability from the defunct corporation's balance sheet.   Thus, there is no irreparable harm.  If Murphy truly has no assets with which to pay, then there is no harm in requiring the payment.  Much to the Fund's dismay, a finding of summary judgment in

favor the Fund does not guarantee that Murphy is collectible. Moreover, Murphy clearly has the ability to pay its attorneys to defend this action and the underlying arbitration so it cannot be completely insolvent. Murphy has failed to show how requiring the company to make its statutorily mandated interim payment would cause irreparable harm.

### III. CONCLUSION

In conclusion, Murphy has failed to establish that the Pension Fund both lacks a colorable claim and that Murphy would be irreparably harmed by making the interim payment. For these reasons, Plaintiffs request that this Court deny Murphy's motion for summary judgment.

Respectfully submitted,

 s/ Timothy C. Reuter
Timothy C. Reuter  (ARDC #06279373)
CENTRAL STATES FUNDS
9377 W. Higgins Road, 10th Floor
Rosemont, IL  60018
(847) 518-9800, Ext. 3481
treuter@centralstatesfunds.org

November 10, 2010                    *COUNSEL FOR CENTRAL STATES*

**CERTIFICATE OF SERVICE**

I, Timothy C. Reuter, one of the attorneys for the Central States, Southeast and Southwest Areas Pension Fund, certify that on November 10, 2010, I electronically filed the forgoing Plaintiffs' Memorandum in Response to Defendant's Motion for Summary Judgment with the Clerk of the Court using the ECF system. This filing was served on all parties indicated on the electronic filing receipt via the ECF system.

 s/ Timothy C. Reuter
Timothy C. Reuter (ARDC #06279373)
CENTRAL STATES FUNDS
Law Department
9377 W. Higgins Road, 10th Floor
Rosemont, IL  60018
(847) 518-9800, Ext. 3481
treuter@centralstatesfunds.org

*COUNSEL FOR CENTRAL STATES*