IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and HOWARD McDOUGALL, Trustee,<br><br>Plaintiffs,<br><br>v.<br><br>MURPHY BROTHERS, INC., an Illinois corporation,<br><br>Defendant. | Case No. 10 C 1447 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiffs Central States, Southeast and Southwest Areas Pension Fund and Howard McDougall, Trustee (collectively the "Fund") sued Murphy Bros., Inc. ("Murphy") for withdrawal liability pursuant to sections 502(g)(2) and 4301(b) of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"). 29 U.S.C. §§ 1132(g)(2) & 1451(b). The parties have filed cross-motions for summary judgment. For the reasons stated below, the Court grants the Fund's motion and denies Murphy's motion.

### Background

The Fund is a non-profit, multi-employer pension plan organized under ERISA. Murphy is a dissolved Illinois corporation. During the period of time in which it operated as an employer, Murphy provided labor on pipeline construction projects at various locations throughout the United States.

Prior to its dissolution, Murphy entered into collective bargaining agreements ("CBAs") with various local unions affiliated with the International Brotherhood of Teamsters. The CBAs required Murphy to make contributions to the Fund on behalf of certain of its employees. In approximately the first or second quarter of 2004, Murphy ceased its operations and began winding up its affairs. The Fund later determined that as of January 1, 2005, Murphy had permanently ceased all covered operations under the pension plan, thus effecting a "complete withdrawal" under 29 U.S.C. § 1383(a). The Fund further determined that as a result of the withdrawal, Murphy incurred withdrawal liability to the Fund in the amount of $2,138,272.55 pursuant to the MPPAA. Murphy received a notice and demand for payment from the Fund on November 26, 2008.

Murphy made no withdrawal liability payments. Instead, on February 19, 2009, Murphy requested that the Fund review its withdrawal liability determination pursuant to 29 U.S.C. § 1399(b)(2)(A). Murphy contended that it was exempt from its duty to pay withdrawal liability under the building and construction industry exemption ("BCIE"), codified at 29 U.S.C. § 1383(b). On August 3, 2009, Murphy initiated arbitration pursuant to 29 U.S.C. § 1401 to challenge the merits of the Fund's withdrawal liability determination. The arbitration proceeding is still pending.

The Fund seeks a judgment that Murphy must make interim withdrawal liability payments plus interest, costs, attorney's fees, and liquidated damages. Murphy, by contrast, seeks a judgment that it has no withdrawal liability to the Fund.

## Discussion

On a motion for summary judgment, the Court draws "all reasonable inferences

2

from undisputed facts in favor of the nonmoving party and [views] the disputed evidence in the light most favorable to the nonmoving party." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2009). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, a court may grant summary judgment "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

ERISA and the MPPAA require an employer that withdraws from a multiemployer pension plan to compensate the plan for its share of unfunded, vested benefits. *See* 29 U.S.C. § 1381. Upon the employer's withdrawal, the plan must determine the amount the employer owes, notify the employer of this amount, provide a schedule for liability payments, and demand payment in accordance with the schedule. *Id.* §§ 1382 & 1399(b)(1). After receiving this demand, the employer may ask the plan to review its liability determination, and the plan must then explain the basis for its determination. *Id.* § 1399(b)(2)(A)-(B). The employer may initiate arbitration if it disagrees with the determination. *Id.* § 1401.

Even if the employer disputes the plan's determination and seeks arbitration, it must make withdrawal liability payments to the plan. *Id*. §§ 1399(c)(2) & (d); *Central States, Se. and Sw. Areas Pension Fund v. Wintz Props., Inc.*, 155 F.3d 868, 872 (7th Cir. 1998) ("ERISA unequivocally establishes a 'pay now, arbitrate later' scheme"). If the arbitrator later decides that the employer had no duty to pay withdrawal liability, the employer is entitled to a refund plus interest. 29 U.S.C. § 1401(d). But if the employer

fails to pay withdrawal liability upon demand, the plan may file a civil action to collect it, as the Fund has done. *Id.* § 1451(a)(1).

There is a narrow exception to a withdrawing employer's obligation to make interim liability payments. To meet this exception, the employer must show that the plan's claim for interim payments is frivolous and the employer would suffer irreparable harm if it were forced to make interim payments. *Central States, Se. and Sw. Areas Pension Fund v. Bomar Nat'l, Inc.*, 253 F.3d 1011, 1016 (7th Cir. 2001); *Central States, Se. and Sw. Areas Pension Fund v. Waterland Trucking Serv., Inc.*, 375 F. Supp. 2d 684, 686 (N.D. Ill. 2005) ("*Waterland I*"). "Frivolous claims are those that have no arguable basis in law or in fact." *Talley v. Lane*, 13 F.3d 1031, 1033 (7th Cir. 1994). If a district court "assure[s] itself that the plan's claim is legitimate . . . the court should order the making of interim payments and leave the rest to the arbitrator." *Trustees of Chicago Truck Drivers, Helpers & Warehouse Workers Union (Independent) Pension Fund v. Central Transport, Inc.*, 935 F.2d 114, 119 (7th Cir. 1991).

Murphy argues that the Fund's claim is frivolous because Murphy qualifies for the BCIE. To qualify for the BCIE, an employer must show, among other things, that "substantially all of the employees with respect to whom the employer has an obligation to contribute under the plan perform work in the building and construction industry." 29 U.S.C. § 1383(b)(1)(A). The Fund argues that Murphy cannot make this showing because its covered employees were mainly involved in delivering supplies to and from job sites, as opposed to performing on-site construction work.

Though the statute does not define "substantially all," the Seventh Circuit has defined it as eighty-five percent or more of a company's employees. *Central States, Se.*

*& Sw. Areas Pension Fund v. Robinson Cartage Co.*, 55 F.3d 1318, 1321 (7th Cir.1995). Though the statute does not define "building and construction industry," its legislative history suggests that the term should "be given the same meaning as has developed in the administration of the Taft-Hartley Act." H.R. Rep. No. 96-869(I), at 76 (1980), *reprinted in* 1980 U.S.C.C.A.N. 2918, 2944; *see also Union Asphalts and Roadoils, Inc. v. MO-KAN Teamsters Pension Fund,* 857 F.2d 1230, 1234 (8th Cir. 1988) (noting that the term "has been construed narrowly [in the Taft-Hartley context] because, as in section 1383 of MPPAA, the term is part of a statutory exception"). Under this meaning, the employees' work must "be in the building and construction industry, not just connected to that industry." *Union Asphalts*, 857 F.2d at 1235 (citing *Hoover, Inc.*, 240 N.L.R.B. 593, 599 (1979)).

Based on the undisputed facts, the Court concludes that the Fund is entitled to summary judgment. To avoid summary judgment, Murphy must raise a genuine issue of fact as to whether the Fund's claim is frivolous. However, there is significant case law supporting the Fund's argument—namely, that the delivery of materials to a job site does not constitute building and construction work. *See, e.g.*, *Central States, Southeast and Southwest Areas Pension Fund v. Waterland Trucking Serv., Inc.*, No. 06 C 4455, 2006 WL 4094350, at *4 (N.D. Ill. Dec. 22, 2006) ("*Waterland II*") ("[M]ere transportation work, without significant involvement on the construction site, does not constitute work in the building and construction industry"); *Waterland I*, 375 F. Supp. 2d at 686 ("It is clear that drivers who merely deliver materials to a construction site are not engaged in the 'construction industry' for all purposes"); *St. John Trucking*, 303 N.L.R.B. 723, 730 (1991) ("[T]he [National Labor Relations] Board has specifically held that an employer

5

who delivers materials . . . to building sites is not an employer engaged in the building and construction industry").

There is no dispute that the Teamsters union members on whose behalf Murphy contributed to the Fund were responsible for driving and operating vehicles between job sites and warehouses or supply yards up to seventy-five miles from the job site. The parties also agree that the Teamsters would drive dump trucks from job sites to local dumps, local water sources, and local parts and supply houses. They further agree that Murphy employees other than the Teamsters union members were typically responsible for job site tasks such as erecting fences and actually installing pipes into the ground.

Based on these facts, no reasonable trier of fact could find the Fund's claim for withdrawal liability be frivolous. The Fund has argued that the Teamsters union members' delivery work does not constitute work in the building and construction industry and has supported the argument with case law. The Court concludes that "a reasonable fact finder could not conclude the [Fund's] claim lacks support in law or fact." *Waterland II,* 2006 WL 4094350, at *5. Because the Fund's claim is colorable, the Court need not consider whether making interim payments would cause irreparable harm to Murphy. *See Bomar*, 253 F.3d at 1016.

The Court stresses that this decision in no way resolves the ultimate issue of whether Murphy qualifies for the BCIE. As noted above, the Court's sole duty is to determine whether the Fund's claim is colorable. The Court leaves to the arbitrator the ultimate questions of the applicability of the BCIE and the final status of Murphy's withdrawal liability to the Fund.

Because the Fund's claim is colorable, Murphy must make interim withdrawal

liability payments. Moreover, since ERISA treats missed interim withdrawal liabilities as delinquent employer contributions, the Fund is also entitled to recover interest on the missed payments, liquidated damages, and attorneys' fees and costs under 29 U.S.C. § 1132(g)(2). *See* 29 U.S.C. § 1451(b). These additional payments are "mandatory add-ons in (successful) suits to enforce" a delinquent employer's duty to contribute. *Central States, Se. and Sw. Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1377 (7th Cir. 1992). Accordingly, the Court will enter judgment requiring Murphy to make the following payments to the Fund: (1) the interim withdrawal liability payments and interest thereon, (2) attorneys' fees and costs, and (3) an amount equal to the greater of (I) the interest on the withdrawal liability or (ii) liquidated damages in the amount of twenty percent of the unpaid withdrawal liability. *See* 29 U.S.C. § 1132(g)(2).

## Conclusion

For the reasons stated above, the Court grants the Fund's motion for summary judgment [docket no. 17] and denies Murphy's motion for summary judgment [docket no. 21]. The Court directs plaintiff's attorney to draft a proposed judgment order and present it to defendant's attorney for review. The case is set for a status hearing on February 23, 2011 at 9:30 a.m for entry of a final judgment.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: February 15, 2011